IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HENRY BARBER,** : | CIVIL ACTION NO. 1:22-CV-1840 |
| : | |
| **Plaintiff** : | (Judge Conner) |
| : | |
| v. : | |
| : | |
| **JESSICA COUSINS,** : | |
| : | |
| **Defendant** : | |

**MEMORANDUM**

This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983.  Plaintiff, Henry Barber, alleges that defendant Jessica Cousins, a nurse practitioner in Huntingdon State Correctional Institution ("SCI-Huntingdon"), was deliberately indifferent to the risk that Barber would commit suicide.  Cousins has moved for summary judgment.  The motion will be granted.

**I.    Procedural History**

Barber filed this case on November 17, 2022.  (Doc. 1).  The case is presently proceeding on Barber's second amended complaint, filed on May 4, 2023, which names Cousins and several other defendants.  (Doc. 35).  Cousins moved to dismiss the second amended complaint on July 21, 2023, asserting failure to exhaust administrative remedies and failure to state a claim upon which relief could be granted.  (Doc. 58).

We granted the motion in part and denied it in part on January 18, 2024.  (Docs. 82-83).  We found that Cousins could not establish the affirmative defense of failure to exhaust administrative remedies at the pleading stage, dismissed Barber's

retaliation claim against Cousins for failure to state a claim, and allowed his deliberate indifference claim against Cousins to proceed. (Id.) The court dismissed Barber's claims against all other defendants pursuant to their joint stipulation of dismissal on April 24, 2024. (Doc. 98). The case accordingly proceeded solely with respect to Barber's deliberate indifference claim against Cousins.

Cousins filed the instant motion for summary judgment on August 30, 2024, along with a supporting brief and a statement of material facts pursuant to Local Rule 56.1. (Docs. 103-05). Barber did not respond to the motion, so on September 27, 2024, we issued an order requiring him to file a brief in opposition to the motion and a statement of material facts responding to defendants' statement. (Doc. 108). Barber did not respond. Pursuant to Local Rules 7.6 and 56.1, Cousins's motion for summary judgment is now deemed unopposed and the factual assertions in her statement of material facts are deemed admitted. See M.D. PA. L.R. 7.6, 56.1.

## II. Material Facts[1]

### A. Factual Background

Cousins was employed as a psychiatric nurse practitioner in SCI-Huntingdon in 2021. (Doc. 105 ¶ 1). She recently changed her name to Jessica Tress, and this

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. L.R. 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. Id. Because Barber has not responded to Cousins's statement, the statement is deemed admitted pursuant to Local Rule 56.1 and we cite directly to it.

name is used on several forms that are at issue in this case.[2] (Id. ¶ 11). Barber's claim against her alleges that she was deliberately indifferent to a risk that he would commit suicide when she released him from a psychiatric observation cell. (Id. ¶¶ 9, 12-13).

Barber was placed in the psychiatric observation cell on September 4, 2021, due to threats of self-harm. (Id. ¶ 38). While in the cell, he used an e-cigarette in violation of DOC policy, refused to relinquish the e-cigarette, and was pepper sprayed by correctional officers. (Id.) Officials monitored Barber's physical and mental health following this incident, but did not note any mental health concerns. (Id. ¶¶ 39-42). On September 7, 2021, Cousins and a psychologist evaluated Barber. (Id. ¶ 45). Barber denied that he had made any threats of self-harm that warranted his placement in a psychiatric observation cell, denied that he was having any suicidal thoughts or feelings, did not report any psychiatric concerns, and did not exhibit any outward signs of distress. (Id. ¶ 46). Cousins and Barber discussed the psychiatric medications he was prescribed, and Barber stated that he would resume taking his medications as prescribed. (Id. ¶¶ 49-50). Cousins ordered Barber to be released from the psychiatric observation cell with close observation orders based on his specific denial of having any suicidal thoughts or ideations. (Id. ¶ 52).

---

[2] We will adopt the style convention used by both parties and continue to refer to defendant as "Cousins."

3

Following Barber's release from the psychiatric observation cell, Cousins met with him to assess his mental health status again on September 15, 2021. (Id. ¶ 53). Barber denied having any suicidal thoughts or thoughts of self-harm. (Id.)

### B. Exhaustion of Administrative Remedies

Exhaustion of administrative remedies in the DOC is governed by the three-step process outlined in the DOC's grievance policy, DC-ADM 804. (See Doc. 105-3).[3] Under DC-ADM 804, a prisoner must first submit a written grievance within 15 working days from the date of the incident. Id. § 1(A)(8). If the inmate is unable to comply with the 15-working day deadline, he may request an extension of time to file a grievance. Id. § 1(C)(2). DC-ADM 804 provides that the grievance must include "a statement of the facts relevant to the claim," "identify individuals directly involved in the events," and "specifically state any claims [the inmate] wishes to make concerning violations of Department directives, regulations, court orders, or other law." Id. § 1(A)(11). Once a grievance has been filed, the prison must respond to the grievance within 15 working days. Id. § 1(C)(5)(g). Next, the prisoner must submit a written appeal to the facility manager within 15 working days. Id. § 2(A)(1)(a). Upon receiving the grievance, the facility manager must respond to the appeal within 15 working days. Id. § 2(A)(2)(d)(1). Finally, the inmate must submit an appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") within 15 working days. Id. § 2(B)(1)(b). SOIGA must respond to the final appeal within 30 working days. Id. § 2(B)(2)(a)(1).

---

[3] Doc. 105-3 is a copy of DC-ADM 804 that has been produced for the court's review as an exhibit to Cousins's motion for summary judgment.

Barber filed five grievances during the period relevant to this case, only one of which, grievance number 945073, is relevant to this case. (Doc. 105 ¶¶ 24-26; Doc. Doc. 105-5, Doc. 105-6, Doc. 105-7). Grievance number 945073 asserted claims based on correctional officers pepper spraying Barber while he was in the psychiatric observation cell. (Doc. 105-7 at 6). The grievance does not mention Cousins or assert that anybody was deliberately indifferent to a risk that he would commit suicide. (Id.) The facility grievance coordinator denied the grievance on February 11, 2022. (Id. at 10). Barber appealed the denied to the facility manager and SOIGA, but his appeals were denied. (Id. at 1, 11). Barber did not mention Cousins at any point in his grievance or related appeals, except to note that his appeal to SOIGA was late because Cousins had placed him in a psychiatric observation cell on a separate, later occasion. (Doc. 105 ¶¶ 26-30; Doc. 105-7 at 12).

When Cousins previously argued that Barber failed to exhaust administrative remedies in her motion to dismiss, Barber argued that the grievance process was unavailable to him because he could not access grievance forms, pencils, or pens during the relevant period. (Doc. 74 at 3; Doc. 105 ¶ 31). During his deposition, however, Barber acknowledged that he had access to grievance forms and writing utensils during the relevant period when he could have filed a grievance against Cousins. (Doc. 105 ¶ 34; Doc. 105-8). Grievance number 945073 was written during the relevant period, on September 9, 2021, using a pen and a standard grievance form. (See Doc. 105 ¶ 32; Doc. 105-7 at 6).

5

### III. Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. FED. R. CIV. P. 56(a). The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of his right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The court is to view the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. See Pappas, 331 F. Supp. 2d at 315.

### IV. Discussion

Cousins argues she is entitled to summary judgment because Barber failed to exhaust administrative remedies and because his claims fail on their merits. (Doc. 104). We agree with both arguments.

Under the Prison Litigation Reform Act ("PLRA"), prisoners complaining about the conditions of their confinement must exhaust available administrative remedies before they may file suit in federal court. 42 U.S.C. § 1997e(a). The PLRA requires proper exhaustion, meaning plaintiffs must administratively grieve their

6

claims in accordance with the procedural rules of the prison in which they are incarcerated. Downey v. Pa. Dep't of Corr., 968 F.3d 299, 305 (3d Cir. 2020) (citing Woodford v. Ngo, 548 U.S. 81, 88 (2006)). Failure to exhaust administrative remedies is an affirmative defense that defendants must plead and prove; it is not a pleading requirement for plaintiffs. Jones v. Bock, 549 U.S. 199, 216 (2007).

A prisoner is only required to exhaust administrative remedies that are "available." Rinaldi, 904 F.3d 257, 268 (3d Cir. 2018) (citing Woodford, 548 U.S. at 93). An administrative remedy is unavailable, and administrative exhaustion is thus excused, in three situations: "(1) when 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when it is 'so opaque that it becomes, practically speaking, incapable of use,' such as when no ordinary prisoner can discern or navigate it; or (3) when 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" Id. at 266-67 (quoting Ross v. Blake, 578 U.S. 632, 643-44 (2016)). If a defendant establishes that the plaintiff failed to exhaust administrative remedies, the burden shifts to the plaintiff to show that the administrative process was unavailable to him. Id. at 268.

Cousins argues that Barber failed to exhaust administrative remedies because he failed to name her in any grievance and because he cannot establish that the grievance process was unavailable. (Doc. 104 at 6-8).

We agree that Barber failed to exhaust administrative remedies. The undisputed evidence of record shows that Barber failed to file any grievance that named Cousins or asserted that she was deliberately indifferent to a risk that

Barber would commit suicide.  (See Doc. 105 ¶¶ 24-30; Doc. 105-5; Doc. 105-6; Doc. 105-7).

Barber also has not met his burden to show that the grievance process was unavailable to him.  Barber has not advanced any unavailability arguments or produced any evidence of unavailability at the summary judgment stage.  Even if we liberally construe his silence as an attempt to stand on his previous argument that the grievance process was unavailable to him because he did not have access to grievance forms or writing utensils, this argument fails.  The undisputed evidence of record shows that Barber did have access to writing utensils and grievance forms during the relevant period, which plainly defeats his unavailability argument.  (See Doc. 105 ¶¶ 32, 34; Doc. 105-7 at 6; Doc. 105-8).  Moreover, even if Barber did not have access to writing utensils and grievance forms, there is no evidence in the record that he requested an extension of time after he regained access to these materials.  His failure to request an extension of time in this situation would constitute failure to exhaust administrative remedies, regardless of whether the grievance process was initially unavailable to him.  Talley v. Clark, 111 F.4th 255, 263-64 (3d Cir. 2024).

Summary judgment in Cousins's favor is additionally warranted because Barber's deliberate indifference claim fails on its merits.  To establish deliberate indifference to risk of suicide, a plaintiff must show (1) that he had a particular vulnerability to suicide, meaning that there was a strong likelihood he would attempt suicide rather than a mere possibility; (2) that defendant knew or should have known of plaintiff's particular vulnerability to suicide; and (3) that defendant

acted with reckless or deliberate indifference to plaintiff's vulnerability to suicide. Palakovic v. Wetzel, 854 F.3d 209, 223-24 (3d Cir. 2017). The record is completely devoid of any evidence that Cousins acted with reckless or deliberate indifference to a risk that Barber would commit suicide when she released him from the psychiatric observation cell. To the contrary, the undisputed evidence shows that Cousins carefully examined Barber prior to his release from the observation cell, and that he explicitly denied having any suicidal thoughts or ideations. (See Doc. 105 ¶ 52). Cousins ordered that Barber be carefully monitored. Approximately eight days later, she reassessed Barber's mental health status and found no evidence of suicidal ideation or that Barber was a danger to himself or others. Accordingly, Barber's claims fail because he did not properly exhaust administrative remedies and the summary judgment record provides no support for his claim of deliberate indifference.

**V.      Conclusion**

We will grant Cousins's motion for summary judgment and close this case. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    December 17, 2024